## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Philadelphia Regional Office<br>1617 JFK Boulevard, Suite 520<br>Philadelphia, PA 19103<br><br>                                    Plaintiff,<br><br><br>                    v.<br><br>WEIGUO ZHAI,<br>9217 Fall River Lane<br>Potomac, Montgomery County, MD 20854<br><br>                                    Defendant. | **Case No. 8:26-cv-2694**<br><br>**COMPLAINT**<br><br>**JURY TRIAL**<br>**DEMANDED** |

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows against Defendant Weiguo Zhai ("Zhai" or "Defendant"):

### SUMMARY

1.      This case concerns Zhai's insider trading in the securities of Icosavax, Inc. ("Icosavax").

2.      On December 12, 2023, Icosavax publicly announced that AstraZeneca PLC would acquire it through a tender offer.

3.      Zhai learned of the potential Icosavax transaction through his employment with AstraZeneca Pharmaceuticals LP, a wholly-owned U.S. subsidiary of AstraZeneca PLC (collectively, "AstraZeneca").

4.      Zhai worked on the due diligence team evaluating the potential Icosavax transaction in November and December of 2023.

5.      In violation of his duties to AstraZeneca, Zhai misappropriated AstraZeneca's confidential information by purchasing Icosavax stock based on his knowledge of the anticipated Icosavax transaction before the tender offer was publicly announced.

6.      Zhai's trading ahead of Icosavax's public announcement of the tender offer generated $10,006 in illicit gains.

## VIOLATIONS

7.      Zhai violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Exchange Act Section 14(e) [15 U.S.C. § 78n(e)]) and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3] by engaging in the conduct this Complaint describes.

8.      Zhai will engage in the acts, practices, transactions, and courses of business set forth in this Complaint, or in acts, practices, transactions, and courses of business of similar type and object, unless the Court restrains and enjoins him.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9.      The Commission brings this action pursuant to Exchange Act Sections 21(d) [15 U.S.C. § 78u(d)] and 21A(a) [15 U.S.C. § 78u-1(a)].

10.     The Commission seeks a final judgment (a) permanently enjoining Zhai from violating Section 10(b) of the Exchange Act or Rule 10b-5 thereunder, and Section 14(e) of the Exchange Act or Rule 14e-3 thereunder; (b) ordering Zhai to disgorge ill-gotten gains he received as a result of the violations this Complaint alleges, and to pay prejudgment interest pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Zhai to pay a civil penalty pursuant to Exchange Act Section 21A [15

U.S.C. § 78u-l]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Exchange Act Sections 21(d), 21(e), 21A, and 27 [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

12.     Zhai, directly and indirectly, made use of the means or instrumentalities of interstate commerce or of the mails or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business this Complaint alleges.

13.     Venue is proper in the District of Maryland pursuant to Exchange Act Section 27 [15 U.S.C. § 78aa].  Zhai resides in the District of Maryland, and certain of the acts, practices, transactions and courses of business constituting the violations of the federal securities laws alleged in this Complaint occurred within this District, where Zhai worked for AstraZeneca at relevant times.

## DEFENDANT

14.     **Zhai**, age 56, lives in Potomac, Maryland.  Zhai was a Senior Director of Research and Development at AstraZeneca Pharmaceuticals LP from in or about July 2020 until in or about May 2024.

## RELEVANT ENTITIES

15.     **AstraZeneca PLC** is a global pharmaceutical company incorporated and headquartered in the United Kingdom.  AstraZeneca PLC had a class of securities registered pursuant to Section 12(b) of the Exchange Act and publicly traded on the NASDAQ under the symbol AZN throughout Zhai's employment with AstraZeneca Pharmaceuticals LP.

3

16.     **AstraZeneca Pharmaceuticals LP** is a wholly-owned subsidiary of AstraZeneca PLC.  AstraZeneca Pharmaceuticals LP is incorporated and headquartered in Delaware.

17.     **Icosavax** was a biopharmaceutical company incorporated in Delaware with its principal place of business in Seattle, Washington.  Icosavax's common stock was publicly traded on the NASDAQ under the symbol ICVX from July 2021 until February 2024.

### FACTS

### I.     Zhai's Employment With AstraZeneca Pharmaceuticals LP.

18.     Zhai joined AstraZeneca Pharmaceuticals LP as a Senior Director of Research and Development in July 2020.

19.     Zhai worked on the AstraZeneca campus in Gaithersburg, Maryland, during his employment with AstraZeneca Pharmaceuticals LP.

20.     Zhai signed a confidentiality agreement when he became an AstraZeneca Pharmaceuticals LP employee.  Among other things, Zhai agreed not to take information he learned in the course of his employment for his own personal use.

21.     Zhai was also subject to other AstraZeneca policies and procedures for employees.

22.     One such policy, "Global Standard: Dealing in AstraZeneca Securities," prohibited AstraZeneca employees who had access to confidential or nonpublic information from other companies, such as potential acquisition targets, from trading in the securities of those companies.

23.     AstraZeneca's Code of Ethics also prohibited employees from insider trading during Zhai's employment with AstraZeneca.

24.     Zhai completed ethics training annually during his employment with AstraZeneca Pharmaceuticals LP.

25.     For example, Zhai had completed ethics training referencing AstraZeneca's insider trading policy on October 16, 2023, approximately six weeks before he engaged in the insider trading this Complaint alleges.

## II.     Zhai Learned Material, Nonpublic Information About the Icosavax Transaction While Serving on the Due Diligence Team Evaluating the Deal.

26.     In late August 2023, Icosavax and AstraZeneca signed mutual non-disclosure agreements in relation to discussions about a possible acquisition.

27.     Between late September 2023 and early November 2023, AstraZeneca and Icosavax negotiated non-binding offers for AstraZeneca's acquisition of Icosavax.

28.     On November 9, 2023, Icosavax accepted AstraZeneca's final non-binding offer to acquire Icosavax through a tender offer.

29.     AstraZeneca's internal code name for the Icosavax transaction was "Project Isochrone."

30.     AstraZeneca assigned Zhai to Project Isochrone's due diligence team on or about November 13, 2023.

31.     Zhai's assignment to Project Isochrone required him to review and confirm, in writing, that he read and understood a Confidential Disclosure Agreement ("CDA") provided to him via e-mail, which outlined AstraZeneca's confidentiality rules and guidelines.

32.     Zhai had to provide such written confirmation before obtaining access to any information pertaining to Project Isochrone, including the name of the target company.

33.     The CDA also provided that the details of the potential acquisition, including the very existence of the potential transaction, were highly confidential.

34.    The e-mail Zhai received with the CDA further provided that Zhai was prohibited from using information he received about Project Isochrone for any work or personal purpose other than assisting AstraZeneca in its planning and preparation for the potential acquisition of Icosavax.

35.    Zhai agreed to the CDA and thus confirmed, in writing, that he read and understood AstraZeneca's confidentiality rules and guidelines on or about November 13, 2023.

36.    On November 14, 2023, Zhai gained access to confidential information concerning Project Isochrone.

37.    Shortly after, Zhai became aware of the potential Icosavax transaction and learned that Project Isochrone was its code name.

38.    Zhai used confidential information concerning Project Isochrone to evaluate an investigational Icosavax vaccine candidate and contribute to a draft due diligence report in connection with the potential acquisition, among other things.

### III.    Zhai Traded Based on Material, Nonpublic Information He Obtained While Serving on the Due Diligence Team.

39.    On November 27, 2023, after learning material nonpublic information concerning the Icosavax transaction, Zhai purchased 1,000 shares of Icosavax stock in his brokerage account for approximately $11.04 per share.

40.    On December 6, 2023, Zhai purchased another 1,000 shares of Icosavax stock in his wife's brokerage account for approximately $10.54 per share.

41.    Zhai had not previously traded in Icosavax securities in his own or his wife's brokerage account prior to these share purchases.

42.     Zhai bought these shares based on the material nonpublic information he learned and misappropriated from AstraZeneca through his employment and his work on the Project Isochrone due diligence team.

43.     On December 12, 2023, Icosavax publicly announced its acquisition through a tender offer by AstraZeneca for $15 per share in cash, plus certain non-tradable contingent value rights.

44.     Following the announcement, Icosavax's stock price rose from $10.49 at the close of trading on December 11, 2023, to $15.68 per share—an increase of approximately 49.48%—at the close of trading on December 12, 2023.

45.     On December 12 and 13, 2023, Zhai sold the Icosavax shares that he had purchased prior to the public announcement of the transaction.

46.     By selling these shares after Icosavax publicly announced AstraZeneca's tender offer, Zhai realized a profit of approximately $4,546 in his brokerage account and a profit of approximately $5,460 in his wife's brokerage account for a total illicit gain of $10,006.

## IV.    Zhai Violated Federal Securities Laws.

47.     The information Zhai obtained through his work on Project Isochrone's due diligence team was material and nonpublic.  A reasonable investor would have viewed this information as important to his or her investment decision and as significantly altering the total mix of information available to the public.

48.     Zhai owed a duty of trust and confidence to AstraZeneca arising out of the policies adhering to his employment with AstraZeneca Pharmaceuticals LP and express agreements to maintain the confidentiality of the Icosavax transaction and not to use such information for his personal benefit.

7

49.     Zhai knew, or was reckless in not knowing, that the information concerning AstraZeneca's anticipated acquisition of Icosavax that he learned through his work on Project Isochrone was material and nonpublic.

50.     Zhai purchased Icosavax securities while aware of and on the basis of material, nonpublic information concerning AstraZeneca's anticipated acquisition of Icosavax, and in breach of his duty of trust and confidence to AstraZeneca.

51.     Zhai knew, or was reckless in not knowing, that he owed a duty of trust and confidence to AstraZeneca arising out of the policies adhering to his employment with AstraZeneca Pharmaceuticals LP and express agreements to maintain the confidentiality of the anticipated Icosavax transaction and not to use such information for his personal benefit.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

52.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51.

53.     By engaging in the conduct described above, Defendant, directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or the facility of national securities exchanges, in connection with the purchase or sale of securities, knowingly or recklessly:

a.      employed devices, schemes, or artifices to defraud;

b.      made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

c.      engaged in acts, practices, or courses of business which operated or would

8

operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

54.     By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R.§ 240.10b-5], thereunder.

## SECOND CLAIM FOR RELIEF

### Violations of Section 14(e) of the Exchange Act and Rule 14e-3 Thereunder

55.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-51.

56.     By November 13, 2023, AstraZeneca (the "offering person") had taken substantial steps to commence or did commence a tender offer for Icosavax shares of stock, but the proposed tender offer was not publicly announced during this time.

57.     By at least November 14, 2023, Zhai possessed material, nonpublic information received through his employment with AstraZeneca Pharmaceuticals LP which related to the tender offer for Icosavax.  Zhai knew or had reason to know that this information was nonpublic; knew or had reason to know that this information was acquired directly or indirectly from (a) the offering person, (b) the issuer of the securities sought or to be sought by such tender offer, or (c) any officer director, partner or employee or any other person acting on behalf of such offering person or such issuer; and purchased or sold, or caused to be purchased or sold, Icosavax's securities; and/or communicated material nonpublic information relating to such tender offer to one or more other persons under circumstances in which it was reasonably foreseeable that such communication was likely to result in a violation of Exchange Act Rule 14e-3.

9

58.     By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)], and Rule 14e-3 [17 C.F.R.§ 240.14e-3], thereunder.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendant from, directly or indirectly, engaging in conduct in violation of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Exchange Act Section 14(e) [15 U.S.C. § 78n(e)], and Rule 14e-3 [17 C.F.R.§ 240.14e-3], thereunder;

### II.

Ordering Defendant to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), and 78u(d)(7)];

### III.

Ordering Defendant to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

### IV.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

## JURY TRIAL DEMAND

The Commission demands a trial by jury on any and all issues in this action so triable.

Respectfully submitted,

Dated:   July 8, 2026

/s/ Spencer Willig
Scott A. Thompson
Julia C. Green
Gregory R. Bockin
Spencer Willig (N.Y. Bar No. 4897443)
Samika N. Osbourne
Attorneys for Plaintiff
Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Phone: (215) 597-3100
Fax: (215) 597-2740
Email: WilligS@sec.gov